IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

| | | |
|---|---|---|
| MICHAEL D. KURTH | § | |
| | § | |
| V. | § | 1:05-CV-472 |
| | § | |
| ALBERTO GONZALES in his official | § | |
| capacity as Attorney General of the | § | |
| United States, United States | § | |
| Department of Justice | § | |

## MEMORANDUM OPINION PARTIALLY ADDRESSING DEFENDANT'S MOTION TO DISMISS

Plaintiff, Michael D. Kurth (Kurth) asserts multiple causes of action under three federal worker-protection statutes.  The defendant, the Attorney General of the United States, moves to dismiss all claims, but without articulating procedural bases for the proposed dismissals.  The defendant's substantive arguments, however, reveal that he seeks dismissal of two claims for lack of subject-matter jurisdiction, a defense which may be asserted by motion under Federal Rule of Civil Procedure 12(b)(1). He argues for dismissal of other claims, asserting that plaintiff fails to allege facts warranting relief, another defense which may be asserted by motion under Rule 12(b)(6).  Finally, he seeks dismissal of all remaining claims on grounds that plaintiff's evidence, accepted as true, fails to raise a genuine issue of material fact support-

ing all essential elements of plaintiff's causes of action.  This defense also may be asserted by pretrial motion for summary judgment under Rule 56.

This opinion addresses the motion only as it pertains to causes of action that defendant contends should be dismissed on Rule 12 grounds.  A separate opinion to be issued later will address causes of action for which defendant contends he is entitled to summary judgment on grounds articulated in Rule 56.  Once both opinions are issued, the court will issue an implementing order.

## I.  FACTUAL BACKGROUND

When considering motions to dismiss and motions for summary judgment, courts accept the version of the facts advocated by the non-movant, or as asserted by the movant without contradiction.  Thus, the factual background stated here is essentially facts averred by Kurth.

Kurth is a 41 year-old male who successfully operated a roofing company in Florida.  He then enlisted in the United States Army where he enjoyed a decorated and successful career, serving a tour of duty in Somalia and an assignment at Fort Leavenworth, Kansas.

Kurth began working for the Federal Bureau of Prisons (BOP) when he was recruited to be part of the staff for the Federal Correctional Complex being built in

Beaumont, Texas.  He was hired in October of 1996 as a Maintenance Worker

Supervisor, a position that involved supervising inmates and managing various

building projects.  During this employment, Kurth received multiple service awards,

and several highly favorable employment evaluations.

Problems arose, however, between Kurth and his supervisor, Walt Prichard

(Prichard).  Kurth alleges that Prichard did not hold himself to the high moral

standards that Kurth thought appropriate for the position.  For example, Kurth

alleges that Prichard ordered him to complete a concrete pour, even though the area

had experienced severe rain for the proceedings two weeks, and more rain was

forecast.  Kurth resisted, as water saturation would ruin the work.  Re-doing the pour

would require unnecessary time and waste taxpayer money.  Kurth protested and

obtained permission from the warden to delay the pour.  Prichard responded by

screaming and yelling at Kurth, insisting that the pour happen that day only because

he (Prichard) had a side bet over a plate of ribs on when the pour would be complete.

Kurth further alleges that Prichard favored certain employees simply because

they were part of a "good ole boys" network.  Under a union contract, overtime was

to be distributed evenly.  But Prichard favored "cronies," and thereby denied other

employees a fair chance at overtime hours.  Kurth himself received adequate overtime

hours, but when other workers got upset, he agreed to help his coworkers file a union grievance.

Prichard learned that the grievance was filed, and who filed it.  He called the employees into a meeting, where he proceeded to yell profanities at them, and threaten their jobs and careers with the BOP.  After the group meeting, Prichard singled Kurth out for individual threats and intimidation.

Kurth began to suffer emotionally.  He had difficulty sleeping and eating, and lost weight rapidly.  His relationship with his wife suffered, and on at least one occasion, he tried to commit suicide.  On advice of doctors, who diagnosed Kurth with severe depression, Kurth began taking sick leave.  When all of his leave time was exhausted, Kurth requested and was allowed to go on leave without pay status. Kurth's doctors advised him that he should not return to a work environment where Prichard would be present.

Kurth filed for worker's compensation benefits.  He also filed a complaint with the Office of the Special Counsel (OSC), complaining of Prichard's actions.[1]  He ultimately received favorable rulings on both initiatives.  He received worker's

---

[1]     OSC is created by statute.  See 5 U.S.C. § 1211.  It is an independent federal investigative and prosecutorial agency, whose mission is to safeguard the federal merit employment system.  See www.osc.gov/intro.htm.  The office is charged with the duty to receive and investigate allegations of prohibited personnel practices, including violations of the Whistleblower Protection Act.  See 5 U.S.C. §§ 1212(a), 1214(a).

compensation benefits based on a finding of job-related injury, and OSC's investiga-
tion resulted in a determination that Prichard violated several agency rules and
policies.  OSC declined to act further, however, as it understood incorrectly that
Prichard had retired.  Prichard in fact continued to work for the BOP for several years
thereafter.

After several months absence from work, Kurth received a termination pro-
posal letter, from the BOP.  Kurth and his counsel then began efforts to avert the
termination, suggesting that Kurth was willing and able to return to work provided
that Prichard was not his supervisor.  The BOP offered Kurth reassignment to
different *areas* and to different *positions* at the complex, but because Prichard was
either currently in the chain of command for those positions, or might someday be
placed in a supervisory role over those positions, Kurth declined all offers.  Kurth
suggested that he be returned to his same Maintenance Supervisor Worker position,
but simply report to a warden, rather than Prichard.

BOP refused to accept Kurth's proposal, and almost seven months after the
initial notice of proposed termination, BOP sent Kurth a final termination notice.
This notice was rescinded a few days later, and a revised termination notice was

issued.[2]  The revised termination notice officially discharged Kurth, effective March 24, 2001.

After his termination, Kurth opened his own contracting and remodeling business.  He continues to run the business as a sole proprietorship, and employs between four and eight employees depending on the time of year.  He also serves as a volunteer in the Southeast Texas Veterans Service Group.  As such, he assists with many military funerals in the area.  He also works with a volunteer fire department as a fire and rescue specialist.

## II.  PROCEEDINGS

After filing a discrimination complaint with the Department of Justice's Equal Opportunity Complaint Adjudication Office and receiving notice of his right to file a discrimination complaint with the district court, Kurth filed this suit.  He asserts causes of action under the Whistleblower Protection Act (WPA), 5 U.S.C. § 2302(b);

---

[2]      Sylvia Ordoñez (Ordoñez), Employee Services Manager at the complex, testified by deposition that the first letter was rescinded and the second sent to make the BOP's position stronger in any subsequent litigation.  (Ordoñez Dep. Ex. 16 at 243:16-244:2)  Whereas the first termination letter stated only that the reason for termination was that "[t]here are no other positions within the Federal Correctional Complex where you would not present a risk to your safety or the safety of others," the revised termination letter stated that the reason for termination was that the BOP determined that Kurth found it emotionally impossible to perform his job.  The second letter also included more information from the BOP, including statements that it did not believe Kurth was disabled, and it detailed the other positions offered to Kurth. (Letter from Dobre to Kurth of 3/21/2001, Ex. 1 at 1.)

Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.*; and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*.

The defendant (Attorney General Gonzales) moves for dismissal, or alternatively, for summary judgment on all of Kurth's claims.  As mentioned earlier, Attorney General Gonzales does not specify procedural grounds on which he seeks dismissal.  From his arguments, however, it appears that he seeks dismissal of Kurth's WPA and Rehabilitation Act retaliation claims on jurisdictional grounds, while seeking dismissal of Kurth's Title VII discrimination and Rehabilitation Act constructive discharge claims because Kurth has failed to allege facts upon which relief can be granted.

### III.  PRINCIPLES OF ANALYSIS

As for the discrete claims mentioned in the preceding paragraph, the court now addresses defendant's motion under standards set by Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Rule 12(b)(1) provides a mechanism for dismissal based on "lack of jurisdiction over the subject matter."  Rule 12(b)(6) provides a similar mechanism for dismissal based on "failure to state a claim upon which relief can be granted."

A.      **Dismissal for Lack of Jurisdiction**

Dismissals under Rule 12(b)(1) are predicated on the fact that federal courts are courts of limited jurisdiction.  Federal courts must have both personal jurisdiction over the parties and subject-matter jurisdiction over the cause of action.  Federal courts may entertain only cases and controversies specified in Article III, Section 2 of the Constitution.  There must be both constitutional and statutory authority before federal jurisdiction attaches.  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  It is presumed that a case lies outside the court's limited jurisdiction, and the burden of establishing jurisdiction is with the party asserting jurisdiction.  Id.

In some instances, carrying that burden requires a showing of prior exhaustion of available administrative remedies.  This requirement stems from the fact that Congress may elect to grant jurisdiction over particular causes of action to administrative agencies.  See Bush v. Lucas, 462 U.S. 367, 378 (1982).  Under the doctrine of administrative exhaustion, claimants who do not first exhaust prescribed administrative remedies are not entitled to seek judicial relief.  See Woodford v. Ngo, 126 S.Ct. 2378, 2385 (2006).  The precise contours of any particular exhaustion requirement are dictated by the terms of the particular statute.  See Sims v. Apfel, 530 U.S. 103, 107 (2000) (discussing the requirements of issue exhaustion).  Generally, however,

when relief is available from an administrative agency, a plaintiff ordinarily must

pursue that avenue of redress before proceeding to the courts.  See  Reiter v. Cooper,

507 U.S. 258, 269 (1993).

**B.      Dismissal for Failure to State a Claim**

On a Rule 12(b)(6) motion, the court must decide whether the facts alleged, if

true, would entitle plaintiff to some legal remedy.  See Conley v. Gibson, 355 U.S.

41, 45-46 (1957).  Dismissal is proper only if there is either: (1) "the lack of a

cognizable legal theory" or (2) "the absence of sufficient facts alleged under a

cognizable legal theory."  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th

Cir. 1988).  "Normally, in deciding a motion to dismiss for failure to state a claim,

courts must limit their inquiry to facts stated in the complaint and the documents

either attached to or incorporated in the complaint."  Lovelace v. Software Spectrum,

Inc., 78 F.3d 1015, 1017 (5th Cir. 1996).  The court also may "consider matters of

which [it] may take judicial notice."  Id. at 1017-18; see Fed. R. Evid. 201(f).

Matters of public record, items appearing in the record of the case, and exhibits

attached to the complaint also may be considered.  See 5B CHARLES ALAN WRIGHT

ET AL., FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004).

The court must accept as true all material allegations in the complaint as well

as any reasonable inferences to be drawn from them.  See Kaiser Aluminum & Chem.

Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982).

Moreover, well-pleaded facts must be reviewed in the light most favorable to plaintiff.

See Piotrowski v. City of Houston, 51 F.3d 512, 514 (5th Cir. 1995).  A plaintiff,

however, must allege specific facts, not conclusory allegations.  Conclusory allegations

and unwarranted deductions of fact are not admitted as true.  See Guidry v. Bank of

LaPlace, 954 F.2d 278, 281 (5th Cir. 1992).

"[A] complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief."  Conley, 355 U.S. at 45-46.  "The motion to

dismiss for failure to state a claim is viewed with disfavor and is rarely granted."

Kaiser Aluminum, 677 F.2d at 1050.  However, "[d]ismissal is proper if the com-

plaint lacks an allegation regarding a required element necessary to obtain relief."

Rios v. City of Del Rio, 444 F.3d 417, 421 (5th Cir. 2006).

## IV.  APPLICATION AND ANALYSIS

### A.    Jurisdiction Challenges

Defendant asserts that plaintiff fails to establish this court's subject-matter

jurisdiction over his WPA claim and his Rehabilitation Act retaliation claim.  This

argument is considered separately for each cause of action in this section.

1.      Whistleblower Protection Act Claims

WPA protects federal employees from certain adverse employment actions taken because the employee reported or made disclosures of wrongdoing by his employer.  See 5 U.S.C. § 2302(b).  Employees must bring complaints of WPA violations to OSC first.  See 5 U.S.C. § 1214(a)(1)(A).  When not satisfied with OSC's initial determination, they can appeal to the Merit Systems Protection Board (MSPB).  See 5 U.S.C. § 1214 (a)(3); 5 C.F.R. § 1209.5(a); Ellison v. Merit Systems Protection Board, 7 F.3d 1031, 1035-36 (Fed. Cir. 1993).  There, a whistleblower can prevail upon proof by a preponderance of the evidence that a protected disclosure was made, and that the disclosure was a contributing factor in an adverse personnel action.  See Carson v. Dep't. of Energy, 398 F.3d 1369, 1377 (Fed. Cir. 2005).  MSPB can order that the employee be placed in a position he would have occupied if not for the prohibited personnel action and be reimbursed for attorney fees, back pay and benefits, medical costs, and other reasonable and foreseeable consequential damages.  See 5 U.S.C. § 1214(g).

Employees who receive adverse MSPB rulings can seek judicial review in the Court of Appeals for the Federal Circuit, (5 U.S.C. § 1214(c)), or in a "mixed case" in

a federal district court.[3]  See Barnes v. Small, 840 F.2d 972, 979 (D.C. Cir. 1988).

Judicial review of MSPB rulings on WPA complaints is limited to setting aside agency

action, findings, or conclusions that are (1) arbitrary, capricious, and abuse of

discretion, or not otherwise in accordance with the law, (2) obtained without

procedures required by law, rule, or regulation, or (3) unsupported by substantial

evidence.  See 5 U.S.C. § 7703(c).  In appropriate cases, the court can remand the

matter to the MSPB with instructions to award relief.  See, e.g., Gilbert v. Dep't. of

Justice, 334 F.3d 1065, 1075 (Fed. Cir. 2003) (reversing and remanding MSPB

decision with instructions to order reinstatement of plaintiff and award incidental

relief).  However, a jurisdictional prerequisite to federal court review is exhaustion of

the administrative remedies recited in the preceding paragraph.  See Stella v. Mineta,

284 F.3d 135, 142 (D.C. Cir. 2002) (it was proper for the district court to dismiss

plaintiff's WPA claim on jurisdictional grounds when plaintiff failed to exhaust her

administrative remedies); see also Richards v. Kernan, 461 F.3d 880, 885 (7th Cir.

2006) (stating that exclusive remedy for claims brought under the WPA is the Civil

Service Reform Act, which requires complaints to be brought to the MSPB, then the

Federal Circuit); Hendrix v. Snow, 170 F. App'x 68, 78-79 (11th Cir. 2006); Harris

v. Evans, 66 F. App'x 465, 466-67 (4th Cir. 2003);  Grisham v. U.S., 103 F.3d 24,

---

[3]      "Mixed cases" involve allegations of employment discrimination "based
on race, color, religion, sex, national origin, age or handicap" as well as
"additional allegations that the MSPB has jurisdiction to address."  See 29
C.F.R. § 1614.302(a)(1).

26 (5th Cir. 1997) (stating that a plaintiff's WPA remedies are exclusively those provided under the Civil Service Reform Act).

Here, Kurth and several other BOP employees filed a grievance against Prichard regarding overtime distribution.  Prichard allegedly learned of this grievance and subsequently held a meeting of employees in the department, including Kurth. Prichard allegedly screamed and yelled profanities, and told employees that he would destroy their careers if they didn't "fall in line" and stop filing grievances.  Kurth alleges that he then was called into an individual meeting with Prichard, where Prichard repeated his earlier threats to end Kurth's career.  Kurth alleges he was told that he could "just play the game or he could take a jump," and that Prichard would "end his career quicker than it started."  Kurth argues that he subsequently attempted to transfer outside of the Beaumont complex, but was denied transfer due to negative work evaluations submitted by Prichard.

Kurth thereafter complained to OSC.  Prichard allegedly learned of this complaint, and three hours later ordered Kurth into his office, where he stated that he had no choice but to make Kurth's life difficult.  Prichard again threatened to end Kurth's career.

Kurth obtained a ruling from OSC that Prichard had violated federal rules and policies.  However, OSC declined to take action as it understood that Prichard had

retired.  Although this information was incorrect, Kurth took no further action on his

WPA complaint until the filing of this lawsuit.  Specifically, he did not appeal the

OSC action to the MSPB.  Thus, assuming this is a mixed case wherein a federal

district court might otherwise act, Kurth has not exhausted his administrative

remedies.  The "mixed case" exception concerns the proper forum to appeal an MSPB

decision.  It does not obviate the jurisdictional requirement to obtain that decision.

See 29 C.F.R. § 1614.302(b) (setting out procedures for mixed cases, and requiring

that the action be brought either directly to the MSPB, or appealed from an agency

decision to the MSPB).

Here, Kurth never obtained an MSPB decision because he never pursued his

complaint past OSC.  Therefore, Kurth's WPA claims – which arguably are his most

compelling – must be dismissed for lack of subject matter jurisdiction.

2.      Rehabilitation Act Retaliation Claim

The Rehabilitation Act provides protection from discrimination based on

disability to employees of the federal government, federal agencies, and programs

receiving federal funds.  The statute further prohibits employer retaliation against

employees who engage in protected activities, such as opposing practices made

unlawful by the Rehabilitation Act or participating in administrative proceedings

under the Rehabilitation Act.  See 29 C.F.R. § 1614.101(b); Shannon v. Henderson,

No. 01-10346, 2001 WL 1223633, *3 (5th Cir. September 25, 2001).  To further

its aims, the statute also authorizes private enforcement causes of action in federal

district courts.  <u>See</u> 29 U.S.C. § 794a(a)(2); <u>Barnes v. Gorman</u>, 536 U.S. 181, 185

(2002).

     The Rehabilitation Act adopts by reference the enforcement scheme and

administrative remedies established for federal employees in Title VII cases.  <u>See</u> 29

U.S.C. § 794a; <u>see also</u>  <u>Prewitt v. U.S. Postal Serv.</u>, 662 F.2d 292, 304 (5th Cir.

1981).  Federal employees who allege discrimination prohibited by Title VII are

governed by section 2000e-16.  <u>See</u> 42 U.S.C. § 2000e-16.  This provision authorizes

and instructs the Equal Employment Opportunity Commission (EEOC) to promul-

gate regulations for processing federal employees discrimination complaints.  <u>Id.</u>

EEOC regulations require federal employees to first contact an EEO counselor within

forty-five days of the alleged discriminatory conduct.  <u>See</u> 29 C.F.R. § 1614.105(a).

If the counselor's solution is unsatisfactory to the employee, the employee must file a

complaint with the agency that allegedly committed the discrimination.  <u>See</u> 29

C.F.R. § 1614.106.  Upon receipt of notice of final action taken by the department or

agency, an employee has ninety days to appeal with the EEOC or file a suit in federal

district court.  <u>See</u> 42 U.S.C. § 2000e-16(c).

15

Kurth filed an administrative complaint with the United States Department of Justice on June 7, 2001. Therein, Kurth complained of discrimination based on disability and reprisal. Kurth stated that he was discriminated against because of his disability and suffered retaliation because of "previous actions [he had] taken because of" his treatment at the complex.

Kurth was notified in a letter dated August 22, 2001, that the claim accepted for investigation was "that [his] disability was not reasonably accommodated and that [he was] subsequently terminated from employment on March 24, 2001." The accepted claim did not mention retaliation specifically. However, the investigating officer pointedly asked Kurth about his reprisal claims during the officer's official interview of Kurth. (Kurth EEO Aff. at 18, Ex. 33.)[4]

Exhaustion of the administrative remedies outlined earlier in this section is a jurisdictional prerequisite to a private suit brought under the Rehabilitation Act. See Prewitt, 662 F.2d at 302-04; see also Woodman v. Runyon, 132 F.3d 1330, 1341 (10th Cir. 1997). As the investigation itself encompassed Kurth's retaliation claims, it is fair to say that the current retaliation claim at least arose out of the scope of

---

[4]     Kurth's EEO Affidavit is in the form of questions posed by the EEO investigating officer and Kurth's answers.  The relevant question was "[t]he other thing you said is you were subjected to reprisals.  Can you tell me about the reprisal issue?  You said you were subjected to reprisal for prior EEO activities."

Kurth's administrative claim.[5]  Kurth received the agency's final decision in a letter

dated June 7, 2005, which notified him of his right to appeal to the MSPB or to file a

suit in federal district court.  (Letter from Gross to Kurth of 6/07/2005, Ex. 3 at 1.)

Thus, Kurth has exhausted his administrative remedies regarding his retaliation

claims,[6] and defendant's motion to dismiss this claim on jurisdictional grounds will be

denied.

**B.      Challenges to Sufficiency of Pleaded Claims**

Defendant argues that Kurth's discrimination claims under Title VII and his

constructive discharge claim under the Rehabilitation Act should be dismissed

because Kurth's complaint fails to aver facts sufficient to warrant a recovery under

either theory.  These claims are addressed in turn in this section.

---

[5]      Claims brought in an action in district court must be like or reasonably related to the claims alleged in the agency or EEOC complaint.  See Thomas v. Texas Dep't. of Criminal Justice, 220 F.3d 389, 395 (5th Cir. 2000); see also Kersting v. Wal-Mart Stores, Inc., 250 F.3d 1109, 1118 (7th Cir. 2001). The scope of the investigation which can reasonably be expected to grow out of the discrimination charge determines which issues are properly before the district court.  See Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006).  Here, it plain that the retaliation claims not only could have been expected to grow out of the investigation, the claims were actually investigated.

[6]      The Fifth Circuit has held that when an employee fails to object to an agency's framing of the complaint, the court must assume that the issues were correctly framed.  See Dollis v. Rubin, 77 F.3d 777, 779-80 (5th Cir. 1995).  The cause of action can, however, be based not only on the specific complaints in the charge, but also upon any kind of discrimination like or related to the charge's allegations.  Id. at 781.

1.     Title VII Claims

Kurth alleges several Title VII claims, including discrimination and retaliation. Title VII prohibits employers from discriminating on the basis of *race*, *color*, *religion*, *sex*, or *national origin*.  See 42 U.S.C. § 2000e-2.  All of Kurth's discrimination and retaliation claims are based on his alleged *disability*.  Disability, however, is not a protected category under Title VII.  Moreover, Kurth has alleged no facts that indicate that any of the BOP's alleged actions were taken on account of Kurth's race, color, sex, religion, or national origin.  Therefore, all of the Title VII claims must be dismissed for failure to state a cognizable claim.[7]

2.     Rehabilitation Act Constructive Discharge Claim

Constructive discharge is actionable under the Rehabilitation Act.  See Handy v. Brownlee, 118 F. App'x 850, 855 (5th Cir. 2004).  Constructive discharge occurs when an employee quits his job under circumstances that are treated as an involuntary termination of employment.  See Haley v. Alliance Compressor LLC, 391 F.3d 644, 649 (5th Cir. 2004).  When an employer deliberately makes an employee's

---

[7]     As noted earlier in text, the Rehabilitation Act's enforcement mechanism is the same mechanism provided for under Title VII.  See 29 U.S.C. § 794a(a).  This, however, does not provide a separate claim under Title VII.  See Plautz v. Potter, 156 Fed. Appx. 812, 815 (6th Cir. 2005) (stating that the Rehabilitation Act provides the *exclusive* remedy for federal employees complaining of disability discrimination); Spence v. Straw, 54 F.3d 196, 202 (3d Cir. 1995) (same).

18

working conditions so intolerable that the employee is forced to resign, the employer is as liable for any illegal discrimination involved as if it had formally discharged the employee.  See id.

Kurth, however, was formally and officially terminated.  Kurth states in his amended complaint that he was officially terminated effective March 24, 2006. Actual termination precludes a suit for constructive discharge.  See Jordan v. City of Gary, 396 F.3d 825, 836-37 (7th Cir. 2005); Haselmann v. Kelly Servs., Inc., No. 04-3213, 2006 WL 2465420, at *17 (D.N.J. August 22, 2006).  Therefore, Kurth's constructive discharge claim must be dismissed for failure to state a claim.

## V.  CONCLUSIONS

For reasons stated above, Kurth's WPA claims must be dismissed for lack of subject-matter jurisdiction.  His Rehabilitation Act claim for retaliation, however, survives defendant's jurisdictional challenge.  Kurth's Title VII discrimination and retaliation claims must be dismissed for failure to state a claim upon which relief can be granted.  Similarly, his Rehabilitation Act claim for constructive discharge must be dismissed for failure to state a claim upon which relief can be granted.

19

An order implementing the foregoing findings and conclusions will be entered at a later date after the court has considered the remainder of defendant's motion.

SIGNED this   29 day of December, 2006.

Earl S. Hines
United States Magistrate Judge